Good morning, Your Honors. May it please the Court, my name is Sean Woods. I'm here on behalf of the appellant, Tiffany Franco. And in this case, we have a dismissal based on a 12b6 motion, and the majority of that dismissal was based on statute of limitations issues. Starting with 12.514 in Arizona, revised statute, in 2019, the Governor of Arizona enacted ARS 12.514 to address specific issues that victims of child abuse had occurred. So it extended the statute of limitations until the age of 30, instead of from the age of majority, which is 18, plus 2 under the tolling statute. There are a breadth of cases in the Ninth Circuit, and there are a couple of Supreme Court cases, which are kind of the foundation on Section 1983 claims and the statute of limitations. Those cases, say, look at the general personal injury statute on when a claim can be brought under Section 1983. In Arizona, again, we have a minor statute, a tolling statute under 12.502, that says if you are under the age of 18, the two-year statute of limitations is tolled until you reach the age of majority. And that is found in the general provisions section of the Arizona statutes under Section 500. The Arizona legislature enacted 12.514 and put it directly in the same chapter or section that all of the other Arizona tolling statutes exist. I would further go and say that Wilson v. Ramos in 1985 was a Supreme Court decision that decided the general provision for Section 1983 claims need to look to the personal injury statute. Owens, in 1989, reaffirmed that and put forth an even stringent and even more stringent requirement that cleared up some of the other case law that was happening, saying that these tolling statutes exist to extend the deadline. Appellant, in this case, is contending that despite this Court's rulings to the otherwise, that because this tolling statute was placed in the general provisions, that it should be considered as a tolling statute for purposes of 1983. How is this case different from Bonneau? I'm sorry? Bonneau is not the Oregon case. Yes, it is. It is the Oregon case. It's very similar. It's very similar. The differences here is we look to what the intention of this statute was, and Doug Ducey wrote that very specifically that victims need time, time to process, understand what has happened, and come forward. And they deserve the right to come forward. Since the 80s, the area of child sexual abuse has matured in the understanding from both a legal and from a medical standpoint. Well, whether it's matured or not, we're still bound by Bonneau. You're right, Your Honor, but I'm asking you to reconsider Bonneau. A three-judge panel isn't free to do that. Yeah, I mean, I think I agree with Judge Graber. Whether we like it or not, we're stuck with Bonneau. Now, there are mechanisms for litigants to ask our court to take it and bonk, but we can't do that. So you've got to give us a way around that case if you've got one. Now, I think you do have some arguments. You can pull down that rope. Go ahead. No, I'm agreeing with you. You've got some arguments you can make, but I'm not sure overturning Bonneau is going to win. Thank you, Your Honor. Moving on. Yeah, there you go. We have a couple of other arguments. One is the unsound mind argument under Arizona 12-502, and Arizona has a couple of kind of pinnacle cases. Doe v. Roe is the big one from the Arizona Supreme Court that says that we'll look back to the Allen test from 1974, which is another Arizona case, that not only do you look at the plaintiff's inability to manage his or her affairs, but you also have to look at whether or not the plaintiff could understand his or her legal rights. What specific allegations are there that your client was unable, within the meaning of the case law, to understand her rights and seek a lawyer to vindicate those rights? Thank you, Your Honor. Under our first amended complaint that we proposed to the district court, and this is excerpts of records starting at 38. I've got it. Well, I have it starting at 17, the red line. But anyway, just what paragraph numbers should I be looking at? We're starting with paragraph 223, and we're ending in paragraph 241, and a couple of paragraphs after that, actually. But in our amended complaint, we talk about how she was not only groomed and sexually harassed, but that she was statutorily raped multiple times, starting from the age of 15. But that does not demonstrate an unsound mind. So appellant, in this case, got into a relationship with her teacher at the age of 15. We're aware of the facts, but these are horrific events that happened, but they don't necessarily demonstrate an unsound mind within the case law that gives extra time for someone who is of unsound mind and can't understand that they may have a right to vindicate. Under the first analysis of the Allen test, I would agree with you under the ability to exercise her day-to-day operations. However, I would also contend that in our allegations, and I think there's a disingenuous argument on the other side here, is that they claim that she was able to hold jobs. However, she would take a job and then get fired from that job because of her acting out from the abuse that she endured. The fact that she started the relationship in 2015 and it didn't end until she was almost 21 by the same abuser, it would be impossible for her, in the belief that she was in love and she was in a loving relationship, to then say, you know what, you abused me, I'm going to file a lawsuit against you, but let's stay in that relationship. This man controlled her. This man groomed her. This man advised her to lie to the police when the police investigation was going on. And she did because she believed that she was in love with Mr. Grantham. When that relationship ended, she then started to realize through therapy, which we also allege, and her therapist said that, you know, she taught appellant that Mr. Grantham's behavior was abusive, manipulative, and it amounted to sexual abuse grooming. She then taught Tiffany at the age of 21 that she was a victim of abuse, which she hadn't understood prior to that, prior to actually going through therapy and uncovering these issues. Once she understood that she was a victim of abuse, that's when she sought out legal counsel. That really suggests that the claim did not accrue until she knew that. That doesn't really suggest that she was of unsound mind. I guess I'm trying to figure out how much of your argument is really when did the claim accrue. Thank you, Your Honor. Your Honor, again, under the Allen test, and the term unsound mind had been used interchangeably with insane or insanity. But after the Allen case, when they analyzed that statute, they said that unsound mind could be that you were incapable of managing your daily affairs. But the second problem is that you didn't understand your legal rights. And it says that it's almost an either-or. You don't have to have both. You can have one or the other. I mean, if that's the case, then a lot of people who just are unfamiliar with the law would be considered of unsound mind because they have no understanding of their legal rights. That can't alone just standing by itself be the test. Counsel, it seems the problem here is that you're essentially saying, well, because she thought she was in love, that she was of unsound mind, right? I mean, the case could be made that anybody who falls in love is essentially of unsound mind to a certain degree. All right? And so this opens the door in virtually every case, at least where there's a claim of a victim being in love, that the limitations period is therefore told. I agree with you in kind of a broad aspect. But, again, this case involved a 15-year-old that was groomed and raped repeatedly. That was horrible. And during that time frame, her mind is developing. She doesn't understand what legal rights. Once she reaches the age of 18, everything that occurs is lawful, though, if she is a willing participant. Agreed, except for, again, the fact that she had been groomed from the age of 15. She had been taught that everything that was happening while she was a minor was okay. So, therefore, in her mind, once she hit 18, it's still okay. Not until she got into therapy did she realize that she was a victim of sexual abuse. And, again, because she was a minor at the time it occurred, and her developing brain understood that this was going to be okay and understood that because the police department did nothing, the SRO, the school resource officer, didn't mandatorily report, even though she had knowledge that this kind of relationship was going on, the totality of all of that, put together with how young she was when it occurred, made her believe that everything was okay with what happened until she hit the therapy. And therapy said to her, her therapist said to her, that she was a victim of sexual abuse. This was not her fault. This man violated her rights. And at that point, she sought out legal counsel. So I agree with you. Judge Graber, I agree with you that—I lost my train of thought there. I apologize. On the accrual issue, that, yes, this might just be very simply an accrual issue because she did not understand or realize that she had legal claims against this man, against the other people that abused her or allowed it to happen. What's the applicable law on when a claim of this kind accrues? Would it not end when she becomes 18? No, I don't believe so. I believe that because she didn't discover that she had legal remedies. So what is your best case saying that if you have experienced a wrong but you don't understand that you have a legal remedy, your claim has not accrued? Doe v. Roe in Arizona Supreme Court from 1998, that talks about the understanding of legal rights, and it's a very similar case in the sense that until therapy occurred, that the plaintiff in that case wouldn't have known. We can also discuss equitable tolling under Fink. The difference in Fink versus this was that the plaintiff was a prisoner, and he already had a complaint against the prison, and he tried to amend that complaint several times to bring claims that were completely unrelated. So equitable tolling didn't apply there. The continuing tort theory is another theory, and the fact that because Mr. Grantham sexually abused and raped our client. But only until she was 18. But he remained in that relationship without controlling her. But the tort stopped at the time she became an adult. At the age of majority, sex between two people is not an actionable claim. However, this man continued to control her and manipulate her to the fact that she didn't understand her claims. Under Stoll, which was decided here in 1999, equitable tolling applies when the plaintiff is prevented from asserting a claim by the wrongful conduct on the part of the defendant. And because he remained in that relationship, it was unfathomable for her to bring a claim against him until she hit therapy and the therapist told her that she was a victim of child sex abuse that then guided the relationship past the age of majority. Do you want to reserve? Yes, Your Honor. Thank you. Thank you. Good morning, Your Honors. May it please the Court, I would like to please reserve three minutes for rebuttal. I don't think you get rebuttal. He goes and then you go and then he goes. So you have the full 15. To start out with, I think, the central issue here, which is accrual and whether unsound mind exists, when looking at the facts that were already pled, it is contradictory to believe that a further motion to amend would allow the plaintiff to revive her claims based on equitable tolling, a continuing tort theory, the discovery rule. Accrual is based upon when the individual knew of the incident and the elements underlying it, when a reasonable person, based on the circumstances, would have known. What is the Doe v. Roe case? Unfortunately, I'm not familiar with that, that opposing counsel mentioned. Yes. It is a 1998 case from the Arizona Supreme Court. The plaintiff in that case was sexually abused by her father as a minor. It's distinguishable in that she had- Well, what was the holding of it? Pardon me? What was the holding about the accrual time for the time for bringing Sue? The holding as to accrual is that the repressed memories of the time of the incident that came to light when she was 34, the unsound mind aspect of it, whether the plaintiff had the mental capacity, whether there was a policy of protecting, whether she was unable to seek or redress the legal issues, it was that based on repressed memories, there is that opportunity. However, Judge, here we don't have repressed memories. We have a fact pattern where on the day that the plaintiff turned 18, she explained by tweeting that she had been living a lie for the past two years. She, as opposed to the Doe v. Roe case, she was aware of the incidents as they were taking place. There were no repressed memories. She admitted to her father that she had sexual relations with this teacher, and that was during the time period that the claims had already accrued. She had been confiding in friends. She had told teachers according to the allegations in the complaint. And so Doe v. Roe is distinguishable in that looking at that fact pattern, it's a different set of circumstances. However, the principles in the case as to unsound mind are applicable here. Inability to understand legal rights, mental disability, whether that plaintiff had a mental capacity to bring a claim, and that's what we don't have here, is the facts that are susceptible to support an allegation like that. Because looking at the record, E.R. 28, paragraph 104, once she was 18, she went public with her relationship. She tweeted, her life was a lie the past two years. She confided in E.R. 32, she admits confiding in a teacher, Ms. Guthrie, as to the sexual relationship with the teacher while she was a minor. E.R. 33, she did the same by confiding in another teacher, Mr. Pagel. E.R. 34, paragraph 184, she admits confiding in a friend, Katrina. E.R. 36, paragraphs 205 to 207, she admits telling her father, when she was already an adult, that the allegations occurred while she was a minor. E.R. 38, she admits being interviewed by police. E.R. 39, paragraph 234, and others, obviously explain a fact pattern that would be difficult to overcome as to her ability to manage daily affairs. So in that sense, Your Honor, I believe Doe v. Rowe explains the legal standards, but is completely different from the case at hand. Does Your Honor have any questions on Doe v. Rowe? No further on that. Thank you very much. Looking at the case in the totality, really what we have is policies that are particular to 1983 and Title IX claims, and those are that despite legislative intent and statutory codification of state statutes pertaining to instances where there are specific child abuse, child sexual molestation statutes to allow tolling, to allow different statute of limitations, the federal law is clear, whether it's Bonneau or whether it's the Supreme Court in Owens and Wilson v. Garcia, that from a practical policy matter, there is to be use of the general provision, and there is to be no use of these other statutes for the purpose of tolling, because the policy applies both to the statute of limitations to go with one, to go with the general statute of limitations. It also applies to tolling statutes. Counsel, I assume, though, that state claims would be available under this statute. That's exactly right, Judge Graber, and they remain. This was a decision that was made as to federal claims, and the state law claims are still alive. They are. That was going to be my question for you, Counsel. Looking at the complaint, it looks like counts 4, 5, 6, 7, and 8. Those are all still live. They've just been remanded to state court. That's exactly right. So even no matter what we do in this case, I guess if we were to reverse the district court, then the district court could take back supplemental jurisdiction of all those claims. But if we affirm, this case is not over. That's exactly right. In conclusion, looking at the complaint, looking at the First Amendment complaint, looking at, for example, the record that I cited, it is just plain and simple a case where leave to amend would not allow the plaintiff to recover from the statute of limitations violation under federal law and equitable tolling under federal law, the discovery rule, which is based on accrual under federal law. And here we have a case where there is so much in the pleading currently that would belie further amendment that the district court judge, Judge Humitua, correctly concluded that this was an issue that required extraordinary circumstances. And looking at the case law in its totality or looking at particular cases, there is not recourse for an individual to argue that despite a reasonable person or despite that person having actual notice, that the claim doesn't accrue until that person understands that the acts that they knew about were wrongful. That's just not the law that the court adheres to and has adhered to. And that's the fundamental issue here, and it goes to accrual, as you said, Judge, at the beginning of the oral argument. It is a case of what was known and what was not known. And looking at what was pled in the pleadings, it's all there, and it can't be contradicted at this point because it is part of the record and it is part of the fact pattern. If there are any further questions, I'd be happy to answer them. No, no further. Nothing. Thank you, Your Honor. Thank you, Counsel. Thank you, Your Honor. That's from a long time ago. Thank you, Counsel. Thank you, Your Honors. In my brief time here, I would just like to point out that ER 39, which is part of the amended complaint, goes into a pretty detailed description of why she did not understand that she had legal remedies. One of the biggest ones, in my opinion, is the fact that she believed Mr. Grantham when he told her to tell a specific story to the police. Later on, she realized that she had lied about the extent of her relationship to the police, and that, in our opinion, goes to the fact that she did not understand what her legal rights were at the time, and she did not fully understand them until she went through therapy and the therapist explained to her that she was a victim of sexual abuse and not someone who had just fallen in love with somebody else. With that, if you have any questions. I just have one further question. Is there any relief that you're seeking in your 1983 claims that you cannot get in your state court claims if we were to affirm, and your client then is forced to prosecute her claims or tort claims in state court? Is there any relief that you're not going to be able to get in state court that you could get in federal court? The only relief would be to take the burden off of appellant in having to pay for legal and attorney's fees. That's right. This is 1988, right? Thank you, Your Honors. Thank you very much, Counsel. Thank you both for your briefing and argument. We're going to take a brief break. We'll be back in a few minutes. Thank you.
judges: GRABER, OWENS, Baker